IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFRY P. O'DEA, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-4755 |
| | § | |
| WELLS FARGO HOME | § | |
| MORTGAGE, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment [Doc. # 69]

filed by Defendants Wells Fargo Home Mortgage ("Wells Fargo") and Federal Home

Loan and Mortgage Corporation ("Freddie Mac"), Defendants' Motion for Judgment

on the Pleadings [Doc. # 71], the Motion for Summary Judgment [Doc. # 72] filed by

Plaintiffs Jeffry P. O'Dea and Cindy O'Dea, and Plaintiffs' Motion for Summary

Judgment on Declaratory Judgment [Doc. # 74]. All pending motions have been fully

briefed.[1] The Court has reviewed the full record and the relevant legal authorities.

---

[1]    Plaintiffs filed a Response [Doc. # 76] to Defendants' Motion for Summary Judgment,
       Defendants filed a Reply [Doc. # 83], and Plaintiffs filed a Sur-Reply [Doc. # 88].

       Plaintiffs filed a Response [Doc. # 71] to Defendants' Motion for Judgment on the
       Pleadings. Included in the Response is a Motion to Strike in which Plaintiffs argue
       that Defendants' Motion for Judgment on the Pleadings is duplicative of Defendants'
       Motion for Summary Judgment. The Motion to Strike is **denied**. Defendants filed
       (continued...)

Based on this review, the Court **grants** Defendants' motions and **denies** Plaintiffs' motions.

## I.    <u>BACKGROUND</u>

In January 2002, Plaintiffs entered into a fixed rate mortgage loan for a condominium to be used by Plaintiffs as a "second home."  Wells Fargo is the loan servicer and Freddie Mac is the current note holder.

The Promissory Note ("Note") provides that Plaintiffs would make "monthly payments on the 1st of each month beginning on March 1, 2002."  *See* Note, Exh. 2 to Defendants' Motion for Summary Judgment, ¶ 3(A).  The Note provides further that a late charge will be imposed if any monthly payment is not received by the fifteenth of the month.  *Id.*, ¶ 6(A).  The Note provides that Plaintiffs will be in default if they "do not pay the full amount of each monthly payment on the date it is due."

---

[1]      (...continued)
a Reply [Doc. # 84].

Defendants filed a Response [Doc. # 81] to Plaintiff's Motion for Summary Judgment, and Plaintiffs filed a Reply [Doc. # 87].

Defendants filed a Response [Docs. # 82 and # 85] to Plaintiffs' Motion for Summary Judgment on Declaratory Judgment.  In the Response, Defendants included a Motion to Strike in which they argue that the Motion for Summary Judgment on Declaratory Judgment is untimely.  The Motion to Strike is **denied**.  Plaintiffs filed a Reply [Doc. # 86].

*Id.*, ¶ 6(B).  It is undisputed that Plaintiffs have never made a monthly payment on the first day of any month.

Also in January 2002, Plaintiffs entered into an Escrow Waiver Agreement under which they agreed to pay their real estate taxes and hazard insurance premiums directly rather than into an escrow account.  *See* Escrow Waiver Agreement, Exh. 6 to Defendants' Motion for Summary Judgment.  The Escrow Waiver Agreement could be revoked if Plaintiffs failed to pay their taxes or premiums, "or in the event of any default by [Plaintiffs] under either the note or the security instrument."  *Id.*  In the event the Escrow Waiver Agreement is revoked, the Deed of Trust provides for payments into escrow for property taxes and insurance premiums.  *See* Deed of Trust, Exh. 1 to Defendants' Motion for Summary Judgment, § 3.

In March 2009, Wells Fargo received notice that Plaintiffs' 2008 *ad valorem* property taxes were delinquent.  Wells Fargo sent notice of the delinquency to Plaintiffs and requested proof of payment.  Wells Fargo advised Plaintiffs that if proof was not received by April 19, 2009, it would pay the taxes, establish an escrow account, and increase Plaintiffs' monthly mortgage payment requirement.  *See* March 2009 Letter, Exh. 11 to Defendants' Motion for Summary Judgment.  Wells Fargo included a postage-paid envelope and a fax number to facilitate Plaintiffs' response.

Wells Fargo did not receive proof of payment of Plaintiffs' 2008 property taxes by the April 19, 2009 deadline and, on May 7, 2009, it sent a second letter to Plaintiffs.  The May 2009 letter advised Plaintiffs that Wells Fargo had paid the taxes and had established an escrow account.  *See* May 2009 Letter, Exh. 12 to Defendants' Motion for Summary Judgment.  Wells Fargo in fact paid the 2008 property taxes and created an escrow account as represented in the letter.

Plaintiffs continued to pay the original mortgage payments (always after the first of the month), but failed to pay the full escrow amount for property taxes already paid for 2008 and for taxes that would be due for 2009.  Plaintiffs advised Wells Fargo that they had paid the 2008 property taxes, but made their check payable to the wrong payee.  It is undisputed that the Harris County Tax Assessor-Collector did not accept the attempted payment.  Wells Fargo verified that Plaintiffs later paid the 2008 property taxes by sending a replacement check.

Having revoked the Escrow Waiver Agreement, Wells Fargo continued to pay Plaintiffs' property taxes, including the taxes for 2009.  Wells Fargo then added an additional escrow amount to Plaintiffs' monthly payment requirement.  Plaintiffs continued to pay the original mortgage payment, but refused to pay the full amount for escrow.  Instead, Plaintiffs paid their property taxes for subsequent years directly

to Harris County, notwithstanding the absence of an effective Escrow Waiver Agreement.

In April 2012, an inspector went to Plaintiffs' condominium to conduct an inspection.  He was not able to enter the condominium, and he left the complex.

Plaintiffs filed this lawsuit in state court on November 12, 2010, naming Wells Fargo as the sole defendant.  Wells Fargo filed a timely Notice of Removal on November 24, 2010.  Plaintiffs filed an incorrectly titled "Third Party Complaint" [Doc. # 14] purporting to add Freddie Mac as a defendant.  Plaintiffs later filed a Second Amended Complaint [Doc. # 48] and a Third Amended Complaint [Doc. # 66], each of which included Freddie Mac as a defendant.

After an extended discovery period, the parties filed the various pending motions.[2]  The motions have been fully briefed and are now ripe for decision.

## II.   APPLICABLE LEGAL STANDARDS

***Judgment on the Pleadings:  Rule 12(c).***  –  "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).  The standard for judgment on the pleadings under Rule 12(c) "is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)."

---

[2]     The deadline for to complete discovery was November 19, 2012.  The pending motions were filed by the December 7, 2012 deadline.

*Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).  The Court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Id.*  The motion "should not be granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint."  *Id.*  The motion focuses on the allegations in the plaintiff's complaint.

***Summary Judgment:  Rule 56.*** – Rule 56 of the Federal Rules of Civil Procedure, on the other hand, focuses on the evidence and mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue

of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the

non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may not make credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413).  The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id*. (citing *Reaves Brokerage*, 336 F.3d at 413).  Affidavits cannot preclude summary

judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud."  (citation omitted)).

Finally, when evidence exists in the summary judgment record but the nonmovant fails to cite it in the response to the motion for summary judgment, that evidence is not properly before the district court.  *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *See id.* (internal citations and quotations omitted).

## III.   DECLARATORY JUDGMENT CLAIM

Plaintiffs seek a declaration that their monthly payment is not due until the fifteenth of each month.[3]  Plaintiffs and Defendants seek summary judgment on this claim.

The Court is to interpret the terms of an unambiguous contract as a matter of law.  *Gonzales v. Denning,* 394 F.3d 388, 392 (5th Cir. 2004); *MCI Telecomm. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999).  "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *SAS Insti., Inc. v. Breitenfeld*, 167 S.W.3d 840, 677 (Tex. 2005).

The court must determine whether a contract is ambiguous as a matter of law. *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir. 2003); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).  The Court may not consider parol evidence for the purpose of creating an ambiguity.  *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 857 (Tex. App.–Houston [14th Dist.], 2003, review denied) (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)).  A

---

[3]      The declaratory judgment claim is Plaintiffs' second claim in the Third Amended Complaint.  Because most of Plaintiffs' other claims are based on their requested interpretation of the Note, the Court addresses this claim first.

contract is not ambiguous simply because the parties disagree about its interpretation. *Id.* (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 728 (Tex. 2001)).

The Note in this case is unambiguous.  It provides clearly and unequivocally that Plaintiffs' monthly payment is to be paid on the first day of each month and, if payment in full is not made when it is due, Plaintiffs "will be in default."  *See* Note, ¶¶ 3(A) and 6(B).  Although the Note provides for additional consequences in the form of a monetary late charge if the monthly payment is not received by the fifteenth of the month, the provision for additional consequences does not relieve Plaintiffs of the obligation to pay the monthly payment on the first day of the month.

This interpretation of the unambiguous Note is supported by language in the Deed of Trust.  Section 2 of the Deed of Trust provides for the manner in which a payment will be applied if the lender receives a payment "for a ***delinquent*** Periodic Payment which includes a sufficient amount to pay ***any*** late charge due."  *See* Deed of Trust, Exh. 1 to Defendants' Motion for Summary Judgment, § 2.  This language implies there may be payments that are delinquent but which have not incurred a late charge.

The Note provides unambiguously that payment is due on the first of the month and is delinquent if not received by that date.  As a result, Plaintiffs' Motion for

Summary Judgment on this issue is denied and Defendants' Motion for Summary

Judgment is granted.

## IV.   <u>BREACH OF CONTRACT CLAIM</u>

In order to prevail on a breach of contract claim, a plaintiff must establish the

existence of a contract, the performance or tender of performance by the plaintiff, a

breach by the defendant, and damages as a result of that breach.   *Bridgmon v. Array*

*Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (citing *Frost Nat'l Bank v. Burge*, 29

S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.)).   In this case, the

contracts in existence are the Note, the Deed of Trust, and the Escrow Waiver

Agreement.

Paragraphs (a) - (m) of Plaintiffs' breach of contract claim are based on

Plaintiffs' disagreement with Wells Fargo's decision to revoke the Escrow Waiver

Agreement and require Plaintiffs to maintain and pay into an escrow account for the

payment of property taxes.   The Escrow Waiver Agreement requires Plaintiffs to pay

the real estate taxes "on or before the due dates."   *See* Escrow Waiver Agreement.

The "due date" for payment of Plaintiffs' 2008 real estate taxes in Harris County was

January 31, 2009.   Indeed, Plaintiffs so allege in their Third Amended Complaint.   *See*

Third Amended Complaint, ¶ 9 ("Texas law . . . provides that taxes owed for a given

year may be paid in the applicable tax year, or up until January 31 of the following

year").  It is undisputed that Plaintiffs did not pay their 2008 property taxes by the January 31, 2009 deadline.  Instead, Plaintiffs sent a check payable to an incorrect payee, and Harris County declined to accept the check.  As a result, Plaintiffs did not pay their property taxes "on or before the due date" and they did not perform their obligations under the Escrow Waiver Agreement.

Plaintiffs' argue that, pursuant to § 33.011 of the Texas Tax Code, Harris County waived the penalty for the untimely payment of the 2008 property taxes.  This argument fails to raise a genuine issue of material fact regarding whether Plaintiffs paid their 2008 property taxes "on or before the due date" as required by the Escrow Waiver Agreement.  It is uncontroverted that the "due date" for property taxes is January 31.  Harris County's decision to waive the penalty for late payment does not alter the due date for purposes of the Escrow Waiver Agreement.  Because Plaintiffs failed to perform their obligations under the Escrow Waiver Agreement, they cannot maintain a breach of contract claim based on subsequent alleged breaches of the agreement by Wells Fargo.

In Paragraph (n) of their breach of contract claim, Plaintiffs allege that Defendants violated RESPA.  For the reasons stated below in connection with Plaintiffs' separate RESPA claim, Defendants are entitled to summary judgment on Plaintiffs' breach of contract claim based on alleged RESPA violations.

In Paragraphs (o)-(q) of the breach of contract claim, Plaintiffs allege that Defendants breached a contract by trespassing on Plaintiffs' property, "failing to provide timely assurances . . . that foreclosure had not occurred," and "failing to specify reasonable cause for the unjustified intrusion." These allegations relate to the attempted inspection of Plaintiffs' condominium in April 2012, discussed more fully below. The Deed of Trust provides that the lender "may make reasonable entries upon and inspection of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause." *See* Deed of Trust, § 7. In this case, it is undisputed that Defendants did not conduct an interior inspection and, therefore, were not required to provide reasonable cause for one. As is discussed below, there was no trespass when the inspector was present in the common area of the condominium complex. Plaintiffs have identified no contractual requirement that Defendants "provide timely assurances . . . that foreclosure had not occurred." As a result, Defendants are entitled to summary judgment on these breach of contract claims.

In Paragraph (r) of the breach of contract claim, Plaintiffs complain that Defendants repeatedly telephoned them. Plaintiffs have not, however, identified any contractual provision that precludes such telephone calls. Indeed, in their response to

the Motion for Summary Judgment, Plaintiffs simply discuss their Texas Debt Collection Act claim. Defendants' Motion for Summary Judgment on this breach of contract claim is granted.

In Paragraph (s) of the breach of contract claim, Plaintiffs allege that Defendants failed to adhere to oral agreements. Under Texas law, the statute of frauds requires all loan agreements involving more the $50,000.00 to be in writing and signed by the party to be bound in order to be enforceable. *See* TEX. BUS. & COM. CODE § 26.02(b). A "loan agreement" for purposes of the statute of frauds is defined to include promises by a financial institution to "delay repayment of money . . . or make a financial accommodation." *See* TEX. BUS. & COM. CODE § 26.02(a)(2). Plaintiffs' claim that Defendants promised to make a financial accommodation in connection with the escrow requirements is barred by the Texas statute of frauds. *See Burnette v. Wells Fargo Bank, N.A.*, 2010 WL 1026968, *5 (E.D. Tex. Feb. 16, 2010) (quoting *Krudop v. Bridge City State Bank*, 2006 WL 3627078, *4 (Tex. App. – Beaumont Dec. 14, 2006, pet. denied)).

Defendants' Motion for Summary Judgment on Plaintiffs' breach of contract claim is granted.

## V.    ESTOPPEL AND RATIFICATION CLAIM

Plaintiffs assert as a claim for relief "estoppel and ratification."  Specifically, Plaintiffs seek to estop Defendants from maintaining and requiring Plaintiffs to pay into an escrow account.  Plaintiffs assert that Defendants waived any right to insist on the escrow fund, and that they ratified the non-requirement of an escrow fund.

Estoppel generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit. *See, e.g., Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515-16 (Tex.1998).  "[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Id.*  "Promissory estoppel generally is a defensive doctrine in that it estops a promisor from denying the enforceability of [a] promise." *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997).  Estoppel does not create a contract where none existed before but, instead, prevents a party from relying on the statute of frauds when necessary to avoid an injustice. *See Hruska v. First State Bank*, 747 S.W.2d 783, 785 (Tex. 1988).

Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right. *See In re Gen. Elec. Capital Corp.,* 203 S.W.3d 314, 316 (Tex. 2006). The elements of waiver are (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *See Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 643 (Tex.1996). Waiver is an affirmative defense. *White v. Harrison*, __ S.W.3d __, 2012 WL 6191348, *3 (Tex. App. – Dallas 2012).

Ratification is also an affirmative defense. *Barrand, Inc. v. Whataburger, Inc.,* 214 S.W.3d 122, 146 (Tex. App. – Corpus Christi 2006, review denied). "The elements of ratification are: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act." *White*, 2012 WL 6191348 at *2 (citing *Motel Enters., Inc. v. Nobani,* 784 S.W.2d 545, 547 (Tex. App. – Houston [1st Dist.] 1990, no writ)).

Defendants are entitled to summary judgment on Plaintiffs' equitable defenses, whether characterized as estoppel, waiver, or ratification. The Deed of Trust provides clearly and unequivocally that the lender may accept any payment "without waiver of any rights hereunder" and, more generally, that any "forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of

any right or remedy."  *See* Deed of Trust, § 1; § 12.  Similarly, the Escrow Waiver

Agreement provides that it is not a waiver of the lender's right to collect escrow funds

"at some future date."  *See* Escrow Waiver Agreement.  The terms of the Deed of

Trust and the Escrow Waiver Agreement establish that Defendants did not intend to

waive or otherwise relinquish any rights thereunder, and enforcement of those

provisions would not create an injustice in this case.  Defendants are entitled to

summary judgment on Plaintiffs' "estoppel and ratification" claim.

## VI.   <u>RESPA CLAIM</u>

Plaintiffs allege that Defendants violated RESPA, 12 U.S.C. §§ 2605, 2607, and

2609.  RESPA was enacted to prevent real estate consumers from being charged

unnecessarily high real estate closing settlement fees caused by abusive practices such

as kickbacks or fee-splitting.  *See Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 358

(5th Cir. 2003).  Defendants moved for summary judgment on Plaintiffs' RESPA

claim, and Plaintiff did not address the separate RESPA claim in its response in

opposition.  Defendants are entitled to summary judgment on Plaintiffs' RESPA

claim.

Plaintiffs allege that Defendants violated RESPA § 2605 by failing to provide

written notice of an assignment to Freddie Mac and for failing to provide a timely

response to Plaintiff's inquiry.  RESPA requires notice of assignment of loan

servicing duties from one entity to another.  *See* 12 U.S.C. § 2605(a).  The undisputed evidence in this case establishes that ownership of Plaintiffs' loan, not the loan servicing, was assigned to Freddie Mac.  There is no evidence of any assignment of loan servicing.

RESPA requires a loan servicer to respond within 20 days (excluding holidays, Saturdays, and Sundays) to a "qualified written request" from a borrower.  *See* 12 U.S.C. § 2605(e).  For purposes of RESPA, a "qualified written request" is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that identifies, specifically or in a manner that enables the loan servicer to identify, the name and account at issue, and that "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  *See* 12 U.S.C. § 2605(e)(1)(B).  The borrower must show that actual damage resulted from an alleged violation of § 2605(e) in order to recover under RESPA.  The uncontroverted evidence establishes that Plaintiffs' attorney sent an inquiry to Wells Fargo on July 13, 2010.  Assuming, without finding, that this letter satisfied the requirements for a "qualified written request," Wells Fargo sent a response on July 19, 2010, well within the 20-day requirement.  Plaintiffs'

dissatisfaction with the contents of the response does not provide evidence that raises a genuine issue of material fact regarding the alleged RESPA violation.

Plaintiffs allege that Defendants violated § 2607 of RESPA by charging unearned fees, specifically fees for unauthorized inspections of Plaintiffs' property. Section § 2607 applies only to charges for real estate "settlement service[s]." There is no evidence that Plaintiffs were improperly charged for any inspections in connection with the settlement of their real estate loan. Indeed, Plaintiffs allege that the unauthorized inspections were in "late April 2012." *See* Third Amended Complaint [Doc. # 66], ¶ 29. This is more than ten years after the closing on Plaintiffs' loan. No claim in this regard would be timely.

Plaintiffs allege that Defendants violated § 2609 of RESPA by maintaining an excessive amount in escrow for taxes and like charges. Plaintiffs argue that Defendants are not authorized to maintain an escrow account and, therefore, any amounts are excessive. As explained more fully above, Defendants were entitled to establish an escrow. Plaintiffs have failed to present evidence that Defendants required an escrow amount that violates RESPA, and Defendants are entitled to summary judgment on the RESPA claim.

## VII.   TEXAS DEBT COLLECTION ACT CLAIM

Plaintiffs allege that Defendants violated several sections of the Texas Debt Collection Act ("TDCA").  Initially, a "debt collector" for purposes of the TDCA does not include a mortgage servicing company."  *See Cervantes v. Home Loans Servicing, L.P.*, 2012 WL 1605558, *4 (N.D. Tex. May 8, 2012); *CA Partners v. Spears*, 274 S.W.3d 51, 79 (Tex. App. – Houston [14th Dist.] 2008, review denied).

Additionally, Plaintiffs have failed to present evidence that raises a genuine issue of material fact in support of this claim.  Plaintiffs first allege that Defendants violated § 392.301(a)(1) by "using or threatening to use criminal means to cause harm to a person or property of a person."  Plaintiffs allege that Defendants violated this section by "dispatching an entity known to break the law to conduct inspections of the condominium property" and that the inspector committed "criminal trespass."  As discussed in the breach of contract section addressing the issue, and below in the section addressing Plaintiffs' separate Invasion of Privacy and Trespass Claims, Plaintiffs have failed to present evidence that raises a genuine issue of material fact regarding the allegation that Defendants engaged, through their inspector, in trespass, civil or criminal.  Moreover, Plaintiffs have cited no evidence that the inspector was "known to break the law to conduct inspections" of condominium properties.  As a result, Defendants are entitled to summary judgment on this TDCA claim.

Plaintiffs allege also that Defendants violated § 392.301(a)(8) by threatening "to take action prohibited by law," specifically to foreclose and/or to accelerate payments.  Plaintiffs allege that Defendants violated § 392.303(2) by attempting to collect unauthorized fees and charges in connection with Plaintiffs' escrow situation, and violated § 392.304 by making fraudulent, deceptive, or misleading representations regarding the amount of Plaintiffs' debt.  As is discussed in connection with Plaintiffs' breach of contract claim and claim for declaratory judgment, Plaintiffs were in default under the Note for failing to make payments by the first of each month, and Plaintiffs failed to comply with their obligations under the Escrow Waiver Agreement by not paying their 2008 property taxes "on or before the due date."  As a result, Defendants were entitled to advise Plaintiffs of their intent potentially to foreclose and/or accelerate payments due under the Note, and there is no evidence Defendants' statements to Plaintiffs regarding the amount of the debt was incorrect.  Defendants are entitled to summary judgment on this TDCA claim.

Plaintiffs allege that Defendants violated § 392.302(4) of the TDCA by causing their telephone to ring repeatedly or continuously.  Under this provision of the TDCA, "a debt collector may not oppress, harass, or abuse a person by . . . causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."  TEX. FIN.

CODE § 392.302(4).  Plaintiffs have not cited the Court to any evidence in the record that any telephone calls from Defendants to Plaintiffs were made "with the intent to harass a person at the called number."  As a result, Defendants are entitled to summary judgment on this TDCA claim.

Plaintiffs allege that Defendants violated § 392.304(a)(1)(A) by allowing its "debt collector to use names other than the true business, professional or legal name of the debt collector."  Plaintiffs allege that Defendants violated § 392.304(a)(2) by "failing to maintain a list of all business or professional names known to be used, or formerly used, by personnel collecting consumer debts or attempting to collect consumer debts."  Apparently, although not argued by Plaintiffs, these claims refer to allegations in the Complaint that the inspector gave a false explanation to the condominium complex's gate attendant to gain access.  There is no evidence, however, that the inspector was a "debt collector" for purposes of the TDCA.  Although acting as an agent of Wells Fargo to conduct an inspection as provided for in the Deed of Trust, Wells Fargo is not a "debt collector" for purposes of the TDCA and there is no evidence that the inspector was a "debt collector" independent of his association with Wells Fargo for purposes of inspecting the collateral.

Finally, Plaintiffs allege that Defendants violated § 392.304(a)(4) of the TDCA by failing to disclose the identity of the person or entity to whom the debt had been

assigned or was owed.  This section, however, "does not apply to a person servicing or collecting real property first lien mortgage loans."  *See* TEX. FIN. CODE § 392.304(b); *Ernster v. Bank of Am., N.A.*, 2012 WL 4798843, *3 (S.D. Tex. Oct. 9, 2012).  As a result, Defendants are entitled to summary judgment on this claim.

## VIII.  **TEXAS DTPA CLAIM**

To state an claim under the Texas DTPA, Plaintiffs must be consumers.  *See* TEX. BUS. & COM. CODE § 17.50(a).  To qualify as consumers, Plaintiffs must "seek or acquire goods or services by purchase or lease" and those goods or services must form the basis of the complaint.  *See Bohls v. Oakes,* 75 S.W.3d 473, 479 (Tex. App. – San Antonio 2002, pet. denied); TEX. BUS. & COM. CODE § 17.45(4).  Whether a plaintiff qualifies as a "consumer" under the DTPA is a question of law for the court to decide.  *See Bohls,* 75 S.W.3d at 479.

Under the DTPA, the lending of money is not "goods or services" for purposes of consumer status.  *See La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 566 (Tex. 1984).  "A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction."  *Porter v. Countrywide Home Loans, Inc.*, 2008 WL 2944670, *3 (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 175 (Tex. 1980)).  In this case, the primary objective of the mortgage transaction

was obtaining a loan.  Plaintiffs did not seek independently to obtain a waiver of any escrow requirement because there was no escrow requirement but for the existence of the loan.  The Court concludes that Plaintiffs did not obtain "goods or services" from Defendants and, as a result, are not consumers for purposes of the Texas DTPA. Defendants are entitled to summary judgment on this claim.

## IX.  <u>FRAUD CLAIM</u>

Plaintiffs allege that Defendants engaged in fraud when they promised to maintain Plaintiffs' mortgage account as non-escrow and when they made unauthorized charges in connection with Plaintiffs' escrow account.  The elements of a fraud cause of action are: (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.  *See Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 563 n.3 (5th Cir. 2002) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998)).  Further, under Texas law, a promise of future performance constitutes actionable fraud only if "the promise was made with no intention of performing at the time it was made." *Formosa Plastics,* 960 S.W.2d at 48; *Hall v. Douglas*, 380 S.W.3d 860, 870-71 (Tex. App. – Dallas 2012, no pet. h.).

In this case, Plaintiffs have failed to cite the Court to evidence that Defendants made promises at a time when they had no intention of performing as promised. Indeed, Plaintiffs do not address their fraud claim in response to Defendants' Motion for Summary Judgment. Defendants are entitled to summary judgment on Plaintiffs' fraud claim.

## X.   INVASION OF PRIVACY AND TRESPASS CLAIMS

Plaintiffs assert invasion of privacy and trespass claims based on the inspector's attempt to inspect their condominium. "The elements of a cause of action for invasion of privacy by intrusion upon seclusion are (1) an intentional intrusion upon a person's solitude, seclusion, or private affairs or concerns, (2) that would be highly offensive to a reasonable person, and (3) as a result of which the person suffered an injury." *Baugh v. Fleming*, 2009 WL 5149928, *1 (Tex. App. – Austin 2009, no pet.) (citing Valenzuela v. Aquino, 853 S.W.2d 512, 513 (Tex. 1993)). This type of invasion of privacy generally involves either a physical invasion of a person's property or eavesdropping on his conversation with the aid of wiretaps, microphones, or spying. *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App. – Tyler 2006, no pet.).

In this case, it is undisputed that the inspector did not gain access to Plaintiffs' condominium but, instead, was present only in common areas of the condominium complex. As a result, the inspector did not intrude on Plaintiffs' solitude or seclusion.

Moreover, the Deed of Trust provides that the lender or its agent may make reasonable entries upon and inspections of the property.  Having agreed to allow the lender or its agent to access the property, the inspector's presence outside the condominium would not be "highly offensive to a reasonable person."  Plaintiffs have failed to present evidence that raises a genuine issue of material fact in support of the invasion of privacy claim, Defendants are entitled to summary judgment.

A trespass may occur when a person enters another person's property without consent. *Wilen v. Falkenstein*, 191 S.W.3d 791, 797 (Tex. App. – Fort Worth 2006, pet. denied).  To establish a claim for trespass to real property, Plaintiffs must prove (1) that they owned or had a lawful right to possess the property, (2) Defendants or their inspector entered Plaintiffs' property physically, intentionally, and voluntarily, and (3) the trespass caused injury to Plaintiffs. *See id.* at 798.  As discussed above, the Deed of Trust provides that the lender or its agent may make reasonable entries upon and inspections of the property.  This contractual consent for the inspector to enter the condominium complex negates any claim of trespass.  Plaintiffs complain that the inspector used subterfuge to enter the complex, telling the gate guard that he had a delivery for Plaintiffs.  Plaintiffs specifically consented to the inspector entering the property.  To physically gain the entry to which Plaintiffs consented, the inspector provided an innocuous reason for seeking to enter the complex, rather than telling the

guard that he was there to conduct an inspection of Plaintiffs' condominium because they were in default under the Note and the lender was exercising its right to conduct an inspection.  The inspector's misrepresentation of the reason for his presence may be a basis for the condominium association to complain, but it does not create a trespass when he was present on the property with Plaintiffs' contractual consent.

Plaintiffs complain also that they did not receive notice that the inspector was going to inspect the property.  The Deed of Trust provides consent for the inspection of the outside areas of the property.  There is no requirement for reasonable cause or notice for an outside inspection.  If, however, there is to be an inspection of the interior of the condominium, then the lender is required to have reasonable cause and to give notice "at the time of or prior to such an interior inspection specifying such reasonable cause."  *See* Deed of Trust, § 7.  It is undisputed in this case that the inspector did not conduct an interior inspection.  Defendants are entitled to summary judgment on Plaintiffs' trespass claim.  Plaintiffs' motion for summary judgment on the trespass and invasion of privacy claims is denied.

## XI.  **LIBEL CLAIM**

Plaintiffs' libel claim is based on the allegation that Defendants made damaging and derogatory remarks to credit reporting agencies that Plaintiffs were delinquent on their monthly mortgage payments.  The Fair Credit Reporting Act ("FCRA") preempts

state law defamation claims unless the customer proves "malice or willful intent to injure" the customer. *See* 15 U.S.C. § 1681h(e); *Young v. Equifax Credit Information Serv., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002). "Malice" for purposes of FCRA preemption requires proof that the defendant made the statements to a credit reporting agency "knowing the statements were false or with a reckless disregard of whether they were false." *See Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 471 (5th Cir. 2006); *Meisel v. USA Shade and Fabric Structures Inc.*, 795 F. Supp. 2d 481, 488 (N.D. Tex. 2011).

In this case, Plaintiffs have failed to present evidence, beyond their own supposition, that Defendants acted with malice or willful intent to injure them. There is no evidence that Defendants knew their statements were false or that Defendants acted recklessly. Indeed, as is discussed more fully above, Plaintiffs at no time during the history of their loan made their monthly payment on the first of the month when it was due. It is also undisputed that Plaintiffs did not pay their 2008 property taxes with funds acceptable to Harris County by the January 31, 2009 deadline. Because they were in default under the terms of the Note and the Escrow Waiver Agreement, Defendants were entitled to revoke the Escrow Waiver Agreement and require escrow payments. There is no evidence whatsoever that Defendants acted with "willful intent to injure" Plaintiffs. As a result, the state law libel claim is preempted by the FCRA.

## XII.   FAIR CREDIT REPORTING ACT CLAIM

Plaintiffs assert claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a) and § 1681s-2(b).  The parties agree that the consensus among courts in the Fifth Circuit is that there is no private right of action for a claim under § 1681s-2(a).  *See, e.g., Haley v. Citibank, N.A.*, 2012 WL 2403501, *2 (S.D. Tex. June 25, 2012) (Miller, J.); *King v. Equifax Info. Servs.*, 2005 WL 1667783, *2 (S.D. Tex. July 15, 2005).

Plaintiffs allege that Defendants violated § 1681s-2(b) by failing to investigate and correct the information they provided to credit reporting agencies.  Section 1681i(a)(2) provides that a credit reporting agency that receives notice of a dispute from a consumer is to provide notice of the dispute to the furnisher of the challenged information within five (5) business days.  *See* 15 U.S.C. § 1681i(a)(2).  After the furnisher receives the notice required by § 1681i(a)(2), § 1681s-2(b) then imposes a duty on the information furnisher to investigate the disputed information and report the results of the investigation to the consumer reporting agency.  15 U.S.C. § 1681s-2(b).  In this case, Plaintiffs have failed to provide evidence that, within five business days after they reported their dispute with Wells Fargo to the credit reporting agencies, those agencies provided notice to Defendants.  Absent evidence that the credit reporting agencies provided the required notice, no obligation under § 1681s-2(b) arose.  *See Young*, 294 F.3d at 639.

Plaintiffs complain that Defendants have not adequately responded to their discovery requests for information Wells Fargo provided to the credit reporting agencies. Initially, the Court notes that this case has been pending in federal court since November 2010. At no point have Plaintiffs brought this alleged discovery dispute to the Court's attention for its assistance in obtaining any discovery to which they are entitled. Moreover, the relevant evidence that is missing is notice *from* the credit reporting agencies *to* Wells Fargo pursuant to § 1681i(a)(2). This evidence, if it exists, would have been obtainable from the credit reporting agencies.

Plaintiffs have failed to present evidence that raises a genuine issue of material fact in support of their § 1681s-2(b) claim, and Defendants are entitled to summary judgment on Plaintiffs' FCRA claim.

## XIII. CONCLUSION AND ORDER

Plaintiffs' monthly payment under the Note was due on the first of each month, and was delinquent if paid after the first. Additionally, Plaintiffs would incur a late fee if the monthly payment was not received by the fifteenth of the month. The fifteenth of the month is the date by which payment must be received in order to avoid the late fee, not the due date for the monthly payment.

Payment of Plaintiffs' 2008 property taxes was due no later than January 31, 2009. The Escrow Waiver Agreement required Plaintiffs to pay the taxes "on or

before" the due date.   Harris County's decision to waive any penalty based on Plaintiffs' late payment of the 2008 property taxes does not negate Plaintiffs' failure to pay the taxes "on or before" the due date.   Because Plaintiffs failed to comply with their obligation to pay the taxes by the due date, Wells Fargo was authorized to revoke the Escrow Waiver Agreement and create an escrow account into which Plaintiffs were required to make payments for property taxes.

The Deed of Trust provides consent for an inspection of the outside areas of Plaintiffs' condominium.   There is no requirement for reasonable cause or notice for an outside inspection.   If, however, there is to be an inspection of the interior of the condominium, then the lender is required to have reasonable cause and to give notice *at the time of or* prior to such an interior inspection.

Based on the foregoing, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 69] and Motion for Judgment on the Pleadings [Doc. # 71] are **GRANTED**.  It is further

**ORDERED** that Plaintiffs' Motion for Summary Judgment [Doc. # 72] and Motion for Summary Judgment on Declaratory Judgment [Doc. # 74] are **DENIED**. It is further

**ORDERED** that Plaintiffs' Motion to Continue [Doc. # 89] the March 6, 2013, docket call until June 2013 is **DENIED AS MOOT**.

The Court will issue a separate, final judgment.

SIGNED at Houston, Texas, this **5th** day of **February, 2013**.

Nancy F. Atlas
United States District Judge